JOHN K. VILLA (appearance *pro hac vice*)
jvilla@wc.com
ANA C. REYES (appearance *pro hac vice*)
areyes@wc.com
BENJAMIN W. GRAHAM (appearance *pro hac vice*)
bgraham@wc.com
HALEY L. WASSERMAN (appearance *pro hac vice*)
hwasserman@wc.com
**WILLIAMS & CONNOLLY LLP**
725 12th Street N.W.
Washington, DC 20005
Phone: (202) 434-5000

L. CHRISTOPHER VEJNOSKA (Cal. Bar No. 96082)
cvejnoska@orrick.com
KAREN G. JOHNSON-McKEWAN (Cal. Bar No. 121570)
kjohnson-mckewan@orrick.com
NATHAN C. DULLUM (Cal. Bar No. 222267)
ndullum@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Phone: (415) 773-5968

*Attorneys for Respondents Orrick, Herrington & Sutcliffe LLP,
Michael Torpey, and Mitchell Zuklie*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| JONES DAY,<br><br>               Petitioner,<br><br>    v.<br><br>ORRICK, HERRINGTON & SUTCLIFFE LLP, MICHAEL TORPEY, and MITCHELL ZUKLIE,<br><br>               Respondents. | Case No. 4:21-mc-80181<br><br>**RESPONDENTS' NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   October 7, 2021<br>Time:  2:00 p.m.<br>Place:  Courtroom 6, 2nd Floor<br>Judge:  Hon. Jon S. Tigar |

**NOTICE OF MOTION AND MOTION**

**TO:    THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 7, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard, in the United States District Court, 1301 Clay Street, Oakland, California, Respondents Orrick, Herrington & Sutcliffe LLP, Michael Torpey, and Mitchell Zuklie will and hereby do move the Court for an order dismissing the Petition with prejudice.  This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6) on the grounds that:

a)     the Court lacks subject-matter jurisdiction over an arbitral summons issued under Section 7 of the Federal Arbitration Act, 9 U.S.C. § 7, because there is no federal-question jurisdiction and the parties are not diverse;

b)     venue is improper in the United States District Court for the District of Columbia under 9 U.S.C. §§ 7 and 204; and

c)     the Petition does not state a claim for relief because an arbitrator acting under authority of the Federal Arbitration Act may only summon natural persons to give testimony, and may only do so within the district where the arbitration is seated.

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................iii

STATEMENT OF ISSUES TO BE DECIDED ..............................................................vii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................... 2

STANDARD ......................................................................................................................... 4

ARGUMENT ........................................................................................................................ 5

I.      THE COURT LACKS SUBJECT-MATTER JURISDICTION. ............................. 5

      A.     Chapter 1 of the FAA Does Not Confer Subject-Matter Jurisdiction. ........................ 5

      B.     Chapter 2 Does Not Silently Confer Subject-Matter Jurisdiction over Chapter 1 Discovery Disputes ............................................................................................. 6

            1.     Chapter 2 Does Not Apply to Discovery Disputes. ....................................... 6

            2.     Chapter 2 Does Not Expand the Federal Courts' Jurisdiction. ....................... 7

            3.     Jones Day's Position Finds No Support in Federal Case Law .................... 11

II.     THE NORTHERN DISTRICT OF CALIFORNIA IS AN IMPROPER VENUE. .............. 12

      A.     Chapter 1, Section 7 Mandates Venue in the District of Columbia. ........................ 13

      B.     Chapter 2, Section 204 Mandates Venue in the District of Columbia. .................... 15

III.    THE SUMMONSES ARE UNENFORCEABLE UNDER THE FAA. .............................. 16

      A.     The FAA Does Not Permit an Arbitrator to Summon Witnesses Outside the District that Contains the Seat of the Arbitration. ..................................................... 17

      B.     The FAA Does Not Permit the Compulsion of Entity Testimony. ........................... 18

      C.     The JAMS Rules Cannot Authorize Third-Party Discovery Outside the FAA. ....... 18

IV.    ANY DISPUTE ABOUT THE DOCUMENTS DEMANDED BY THE SUMMONSES IS NOT RIPE FOR ADJUDICATION AND SHOULD BE DEFERRED. ..................................................................................................................... 19

CONCLUSION ................................................................................................................... 20

        

# TABLE OF AUTHORITIES

<u>Cases</u> <span style="float:right"><u>Page(s)</u></span>

*Alliance Healthcare Servs., Inc. v. Argonaut Private Equity, LLC,*
  804 F. Supp. 2d 808 (N.D. Ill. 2011) ................................................................. 15

*Amgen Inc. v. Kidney Ctr. of Delaware County, Ltd.,*
  1994 WL 594372 (E.D. Pa. Oct. 20, 1994) ......................................................... 14

*Assoc. of Med. Colls. v. United States,*
  217 F.3d 770 (9th Cir. 2000) ............................................................................... 4

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,*
  571 U.S. 49 (2013) .............................................................................................. 13

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1990) ............................................................................... 5

*BNSF Ry. Co. v. Tyrrell,*
  137 S. Ct. 1549 (2017) ........................................................................................ 13

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
  824 F.3d 1156 (9th Cir. 2016) ............................................................................. 16

*Cerner Middle E. Ltd. v. Belbadi Enterprises LLC,*
  939 F.3d 1009 (9th Cir. 2019) ............................................................................. 12

*CVS Health Corp. v. Vividus, LLC,*
  878 F.3d 703 (9th Cir. 2017) ............................................................................... 15

*Daimler AG v. Bauman,* 571 U.S. 117 (2014) ............................................................ 3

*Drexel Burnham Lambert, Inc. v. Valenzuela Bock,*
  696 F. Supp. 957 (S.D.N.Y. 1988) (Leval, J.) ................................................. 9, 10

*Dynegy Midstream Servs. v. Trammochem,*
  451 F.3d 89 (2d Cir. 2006) ........................................................................ 14, 15, 18

*Fourco Glass Co. v. Transmirra Prod. Corp.,*
  353 U.S. 222 (1957) ............................................................................................ 13

*Hall St. Assocs., L.L.C. v. Mattel, Inc.,*
  552 U.S. 576 (2008) ............................................................................................. 5

*Hay Grp., Inc. v. E.B.S. Acquisition Corp.,*
  360 F.3d 404 (3d Cir. 2004) .......................................................................... 3, 18

*Int'l Longshore and Warehouse Union v. Pacific Marine Ass'n,*
  2011 WL 6141055 (N.D. Cal. 2011) ................................................................. 20

iii

*Johnson v. Payless Drug Stores Nw., Inc.*,
    950 F.2d 586 (9th Cir. 1991) .......................................................................................... 13

*Kenney, Becker LLP v. Kenney*,
    2008 WL 681452 (S.D.N.Y. Mar. 6, 2008) ..................................................................... 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ......................................................................................................... 5

*Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*,
    549 F.3d 210 (2d Cir. 2008) ............................................................................................ 19

*Maine Cmty. Health Options v. Albertsons Companies, Inc.*,
    993 F.3d 720 (9th Cir. 2021) ........................................................................................ 5, 7

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*,
    939 F.3d 1145 (11th Cir. 2019) ................................................................................... 3, 14

*McTammany v. Foundation Capital Partners L.P.*,
    2015 WL 12781404 (C.D. Cal. May 1, 2015) ................................................................. 18

*Mengel Co. v. Nashville Paper Prod. & Specialty Workers Union, No. 513*,
    221 F.2d 644 (6th Cir. 1955) ............................................................................................ 8

*Neitzke v. Williams*,
    490 US. 319 (1989) ......................................................................................................... 16

*Ogden v. Digital Intel. Sys. LLC*,
    2021 WL 2104509 (9th Cir. May 12, 2021) .................................................................... 5

*Owen Equip. & Erection Co. v. Kroger*,
    437 U.S. 365 (1978) ......................................................................................................... 5

*Piedmont Label Co. v. Sun Garden Packing Co.*,
    598 F.2d 491 (9th Cir.1979) ............................................................................................. 4

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) (Black, J., dissenting) .................................................................... 8

*Progenics Pharm., Inc. v. IMS Consulting Group*,
    Case No. 14-mc-245 (S.D.N.Y. Aug. 13, 2014) ............................................................ 18

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148 (1976) ....................................................................................................... 13

*Rembrandt Vision Techs, L.P. v. Bausch & Lomb, Inc.*,
    2011 WL 13319343 (N.D. Ga. Oct. 7, 2011) ................................................................. 14

*Saadeh v. Farouki*,
    107 F.3d 52 (D.C. Cir. 1997) ......................................................................................... 16

iv

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ................................................................................................ 6, 12

*Schottenstein v. Wells Fargo Bank, N.A.*,
    2020 WL 7399003 (S.D. Fla. Dec. 17, 2020) .................................................... 5

*Singh v. Am. Honda Fin. Corp.*,
    925 F.3d 1053 (9th Cir. 2019) ............................................................................ 5

*Tagger v. Strauss Grp. Ltd.*,
    951 F.3d 124 (2d Cir. 2020) .............................................................................. 16

*Tang Energy Grp., LTD v. Catic U.S.A.*,
    2015 WL 4692459 (N.D. Cal. Aug. 6, 2015) ............................................. 11, 19

*TeleSign Corp. v. Twilio, Inc.*,
    2015 WL 12765482 (C.D. Cal. Oct. 16, 2015) .................................................. 13

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009) ........................................................................................... 15

*Washington Nat'l Ins. Co. v. OBEX Grp. LLC*,
    958 F.3d 126 (2d Cir. 2020) ............................................................................... 5

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ............................................................................. 4

*Yuen v. U.S. Stock Transfer Co.*,
    966 F. Supp. 944 (C.D. Cal. 1997) .................................................................... 3


<u>Statutes, Rules</u>                         <u>Page(s)</u>

9 U.S.C. § 1 ...................................................................................................... 10

9 U.S.C. § 2 ...................................................................................................... 10

9 U.S.C. § 4 ........................................................................................................ 9

9 U.S.C. § 7 ................................................................................................ *passim*

9 U.S.C. § 202 .................................................................................................... 6

9 U.S.C. § 203 ............................................................................................. *passim*

9 U.S.C. § 204 .............................................................................................. 15, 16

9 U.S.C. § 206 ................................................................................... 7, 9, 11, 12

9 U.S.C. § 207 ........................................................................................... 7, 9, 10

                                     

9 U.S.C. § 208 .................................................................................................... 7, 10, 11

28 U.S.C. § 1391 .......................................................................................................... 13

28 U.S.C. § 1400 .......................................................................................................... 13

28 U.S.C. § 1406(a) ..................................................................................................... 13

28 U.S.C. § 2000e-5(f)(3) ........................................................................................... 13

Federal Rule of Civil Procedure 12(b)(1) ..................................................................... 4

Federal Rule of Civil Procedure 12(b)(3) ..................................................................... 4

Federal Rule of Civil Procedure 12(b)(6) ........................................................... 4, 5, 16

Federal Rule of Civil Procedure 30(b)(6) ........................................................... 18, 19

Federal Rule of Civil Procedure 45(c)(1) .................................................................... 17

vi

## STATEMENT OF ISSUES TO BE DECIDED

1.      Does the Court have subject-matter jurisdiction over the Petition to enforce an arbitral summons issued under Section 7 of the Federal Arbitration Act, 9 U.S.C. § 7?

2.      Is the Northern District of California a proper venue for this enforcement action under 9 U.S.C. §§ 7 and 204?

3.      Are the arbitral summonses invalid under the Federal Arbitration Act because they purport to command the attendance of (i) witnesses outside the seat of the arbitration and (ii) an entity rather than a natural person?

**INTRODUCTION**

Jones Day seeks to enforce an arbitral summons against Orrick, Herrington & Sutcliffe LLP ("Orrick"), its CEO and Chairman, Mitchell Zuklie, and its former Managing Partner, Michael Torpey (collectively, "Respondents").  As Jones Day has already correctly acknowledged in a prior proceeding, there is no federal subject-matter jurisdiction—including, of course, in this Court—to enforce its Petition, which is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* (**Part I**).  The Court should dismiss the Petition for lack of subject-matter jurisdiction.

Because Jones Day chose the FAA as the law governing the arbitration, Jones Day has also filed this action in the wrong venue.  As applied here, the FAA mandates that a petition to enforce a summons be filed in the district court of the district that serves as the seat of the arbitration.  The seat of Jones Day's arbitration is the District of Columbia.  Since California is not the seat, the Northern District of California is an improper venue for Jones Day's enforcement action (**Part II**).

Were Jones Day to address the foregoing issues by refiling in another jurisdiction, the summonses would still be unenforceable.  An arbitrator does not have the power to issue a summons from D.C. with a return location in California.  Separately, Jones Day cannot summon an entity, here Orrick.  It can only summon natural persons.  And it cannot summon anyone to produce only documents (**Part III**).

Jones Day complains that if this Court does not hear its Petition, it will have no court to turn to for relief.  Jones Day has made that representation to a court once before—and now seeks to retract it.  Whatever the veracity of Jones Day's current claim that it has no other remedy, this Court does not have federal subject-matter jurisdiction to enforce the petition.  Jones Day's dilemma, if it has one, is an issue of its own making. █████████████████████████

███████████████████████████████████████████████████████

███████████████████.  It chose the FAA, along with its widely-recognized limitations on third-party discovery.  ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████

Jones Day is an exceptionally sophisticated litigant that doubtlessly understood the FAA; it had the power to select its own governing law, whether the FAA or not; and there is no unfairness in leaving it with the consequences of its decision. That is what the D.C. Superior Court—its first-choice forum—held, and it remains true today.

## BACKGROUND

This action is Jones Day's second attempt to enforce a summons on Orrick, a third-party to Jones Day's arbitration. None of the Respondents here are parties to that arbitration or to the underlying agreement to arbitrate, ███████████████████████████████████████ ██████████████████████████████████████████████████████████ ███ provides that the parties must submit any dispute between them to arbitration seated in Washington, D.C. and governed by the FAA. Mot. at 5. Jones Day is a sophisticated law firm with an international arbitration practice. Its website promotes a "Global Disputes" team of "[m]ore than 200 lawyers, located in 27 business centers worldwide," that focuses on international and commercial arbitration. *See* Request for Judicial Notice ("RJN"), Ex. B. Its choice of arbitral law was surely well informed: by selecting the FAA to govern disputes ███████████, Jones Day dramatically limited the available rights of third-party discovery, which no doubt shielded clients from these disputes and which Jones Day no doubt believed benefited the firm. As Jones Day explained, ████████████████████████████████████ ██████████████████████████████████████ 

In June 2020, Jones Day ██████████████████████████ ████████████████████████████████████████████████████. During the arbitration, Jones Day sought third-party discovery from Orrick. But that presented a number of problems for Jones Day, most notably that the FAA does not permit the discovery it wanted. The summons Jones Day requested from the Arbitrator was defective because it sought to compel the production of documents without testimony and from an entity rather than a natural person—neither of which is permissible under the FAA. If a witness declines to comply with an arbitral summons, Chapter 1, Section 7 permits a party to enlist the assistance of the federal courts to compel the attendance of any such witness, and directs that party to petition "the United States district court for

2

the district in which [the arbitrator is] sitting." 9 U.S.C. § 7.  Here, the seat of the arbitration is Washington, D.C.

Recognizing that it had no avenue into federal court, Jones Day sought recourse in a different forum—D.C. Superior Court.  In making its pitch to that court, it represented in its own words that the provisions of the FAA that govern arbitral summonses, "*do not confer subject-matter jurisdiction on the federal courts, and diversity does not exist between Orrick and Jones Day.*" RJN, Ex. A, Opp'n 1 (emphasis added).   It complained that the terms of the FAA that govern the ████████ dispute put Jones Day in "a catch-22 that would leave [it] without a remedy."  *Id.* at 29. Jones Day lamented that if it were forced to seek relief in federal court, as the FAA commands, then "there is *not a single court in the entire country* with the jurisdiction to enforce Jones Day's validly-issued arbitral Subpoena."  *Id.* at 1 (emphasis in original).  Presumably acting under its duties of candor and accuracy to the D.C. Superior Court, Jones Day made these statements in an attempt to persuade that court to break the "catch-22" and allow it to proceed under the D.C. law.

After briefing and oral argument—and having heard Jones Day's position on jurisdiction and the lack of available fora—the D.C. Superior Court dismissed the petition.[1]  *See* Thatch Decl., Ex. E.  It concluded that (i) the FAA did not grant a right that could be vindicated in state court and (ii) it lacked personal jurisdiction over Orrick.[2]  *Id.*  The so-called "catch-22" was in fact a creature of Jones Day's own making:  it selected the FAA as the governing law for arbitrations ████ ████████, knowing full well the pros and cons associated with that selection.  The D.C. Superior Court observed ████████████████████████████████████████████

---

[1] *See Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 409 (3d Cir. 2004) (noting that severe limitations imposed by the FAA are not reason to rewrite the statute); *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1160 (11th Cir. 2019) ("the policy argument does not supersede the text of the statute")

[2] Jones Day's choice to first seek enforcement in the District of Columbia is striking for another reason.  Orrick is not headquartered in Washington, D.C., and personal jurisdiction was plainly lacking under *Daimler AG v. Bauman*, 571 U.S. 117 (2014).  Jones Day was apparently so confident that this Court lacks subject-matter jurisdiction that it thought its chances were better at persuading the Superior Court to ignore *Daimler* than persuading this Court to find subject-matter jurisdiction. The Superior Court did not accommodate Jones Day and followed *Daimler* to dismiss the Petition, knowing full well based on Jones Day's own assertions that the outcome would be that Jones Day could not enforce the summons elsewhere.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ But Jones Day chose not to do so.  If that selection created a problem for Jones Day in the scope of third-party summonses available to it, that problem was a direct consequence of Jones Day's choice of law.  While it is understandable that Jones Day would select a governing law that severely limits third-party discovery for its own institutional reasons, the limitations on third-party discovery apply in both directions—including here, ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Rejected by its first-choice court, Jones Day reversed course.  Gone is the claim that "not a single court in the entire country" can enforce its summonses.  Jones Day now contends that when it wrote "not a single court in the entire country" can enforce the summons, what it *really* meant (but did not tell the D.C. court) was that "not a single court in the entire country [under Chapter 1 of the FAA]" can enforce the summons.  And when it wrote the FAA "do[es] not confer subject-matter jurisdiction on the federal courts" what it really meant (but did not tell the D.C. court) was that "[Chapter 1 of the FAA] do[es] not confer subject-matter jurisdiction on the federal courts."  In fact, its earlier concessions were well-founded.  Having been rejected by one court, it should not now be heard to disavow its admissions to that tribunal.

Even if this Court were to entertain this unseemly about-face, Jones Day was right then and is wrong now.  Neither Chapter 1 nor Chapter 2 of the FAA confers federal-question jurisdiction on the federal courts.  Because there is also no diversity, this action should be dismissed.

## STANDARD

Respondents have moved to dismiss the Petition under Federal Rules of Civil Procedure 12(b)(1), (3), and (6) in Parts I, II, and III, respectively.  On a motion under Rule 12(b)(1), the petitioner has the burden to establish that the court has subject-matter jurisdiction.  *Assoc. of Med. Colls. v. United States*, 217 F.3d 770, 778–779 (9th Cir. 2000).  Where, as here, a respondent files a facial challenge to jurisdiction, the question for the court is whether federal jurisdiction is established on the face of the petition.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  On a motion under Rule 12(b)(3), the petitioner bears the burden of establishing proper venue.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir.1979).  And on a motion under Rule 12(b)(6), the Court accepts the well-pled allegations of the Petition as true, but

4

must dismiss if those allegations fail to state a cognizable legal theory upon which relief may be granted. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**ARGUMENT**

## I. THE COURT LACKS SUBJECT-MATTER JURISDICTION.

Federal courts are "courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A cause of action is "presumed" to fall outside of the federal courts' "limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The FAA governs the summonses at issue. Jones Day contends that Chapter 2 of the FAA confers subject-matter jurisdiction. Pet. ¶ 5. It does not.

### A. Chapter 1 of the FAA Does Not Confer Subject-Matter Jurisdiction.

The FAA is "something of an anomaly in the field of federal-court jurisdiction" because it "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008) (internal quotation marks omitted). That includes petitions to enforce arbitral summons under Section 7. *Maine Cmty. Health Options v. Albertsons Companies, Inc.*, 993 F.3d 720 (9th Cir. 2021).

Parties seeking to enforce arbitral summonses in federal court therefore generally rely on diversity jurisdiction. *See, e.g.*, *Maine Cmty. Health Options*, 993 F.3d at 722; *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020); *Schottenstein v. Wells Fargo Bank, N.A.*, 2020 WL 7399003, at *4 (S.D. Fla. Dec. 17, 2020) (collecting cases). Diversity is lacking here because "[p]artnerships are citizens of each state or foreign country of which any partner is a citizen," *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1064 n.10 (9th Cir. 2019), and Jones Day and Orrick both have partners who are citizens of California (some of whom are on the captions of these pleadings). The Ninth Circuit recently dismissed a petition under the FAA as "frivolous" because diversity was lacking. *Ogden v. Digital Intel. Sys. LLC*, 2021 WL 2104509, at *1 (9th Cir. May 12, 2021).

**B.      Chapter 2 Does Not Silently Confer Subject-Matter Jurisdiction over Chapter 1 Discovery Disputes**

Notwithstanding its earlier concessions, Jones Day now advances a novel jurisdictional argument: that Chapter 2, Section 203 of the FAA confers subject-matter jurisdiction on the Court. We have not identified a single case in the fifty years since enactment of Chapter 2 of the FAA in which a federal court exercised subject-matter jurisdiction under Chapter 2, Section 203 to compel a third-party to appear at an arbitration pursuant to a summons issued under Chapter 1, Section 7. Presumably, Jones Day has not found one either, or it would have appeared in its Motion to Compel.  This Court should not be the first.

Jones Day's position is wrong for several reasons:

**1.      Chapter 2 Does Not Apply to Discovery Disputes.**

Chapter 2 of the FAA implements the United States' obligations under the Convention on the Enforcement and Recognition of Arbitral Awards, commonly referred to as the "New York Convention," for international arbitrations.  *See* 21 U.S.T. 2517.  Chapter 2, Section 203 provides:  "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States" and "[t]he district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

But the "actions or proceedings" under the Convention are quite limited and specifically enumerated in the Convention.  There is no "action or proceeding" under the Convention to compel compliance with an arbitral summons.  *See generally* 21 U.S.T. 2517.  Indeed, the Convention does not prescribe any procedural rules on the conduct of the arbitration, nor obligate the signatory states to provide any third-party discovery rights to arbitrating parties.

The Convention's "actions and proceedings" clause instead concerns two topics:  the recognition of arbitration agreements and the enforcement of arbitral awards.  *See* 9 U.S.C. § 202 (defining the "arbitration agreement or arbitral award" "falling under the Convention"); *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 517 (1974) ("The goal of the Convention . . . was to encourage the recognition and *enforcement of commercial arbitration agreements* . . . and *arbitral awards*[.]").

1   Put differently, the Convention governs the very beginning and the very end of the process; it has

2   no place in any part of the middle.  More specifically:

3       *Recognition of Arbitral Agreements*.  Article II of the Convention (implemented by Chapter

4   2 of the FAA) requires signatory states to recognize arbitration agreements and "refer the parties to

5   arbitration" pursuant to its terms.  Section 206 permits a party to petition the federal district courts

6   to issue an "[o]rder to compel arbitration" or to "appoint arbitrators in accordance with the

7   provisions of the agreement."  9 U.S.C. § 206.

8       *Enforcement of Arbitral Awards*.  Article III of the Convention (implemented by Chapter 2

9   of the FAA) requires signatory states to "recognize arbitral awards as binding and enforce

10  them."  Accordingly, Section 207 provides that a party "may apply to any court having jurisdiction

11  under this chapter for an order confirming the award[.]"  9 U.S.C. § 207.

12      **2.    Chapter 2 Does Not Expand the Federal Courts' Jurisdiction.**

13      Jones Day cannot bring an action under Chapter 1 to enforce a third-party discovery

14  summons issued under Section 7 because there is no diversity and therefore no subject-matter

15  jurisdiction.  *Maine Cmty. Health Options*, 993 F.3d at 72.  Jones Day does not dispute this.  But it

16  now contends that Chapter 2 of the FAA—which nowhere mentions discovery—somehow does

17  confer that jurisdiction.  To make that argument, Jones Day relies on the so-called residual clause in

18  Chapter 2, Section 208.  That clause provides that "Chapter 1 [of the FAA] applies to actions and

19  proceedings brought under this [Chapter 2] to the extent that chapter is not in conflict with this

20  [Chapter 2] or the Convention as ratified by the United States."  9 U.S.C. § 208.  Jones Day argues

21  Congress intended for this residual clause to give the federal courts subject-matter jurisdiction over

22  actions to compel discovery under Section 7 of Chapter 1.  That argument is mistaken.

23      *First*, by its text, the residual clause applies "to actions and proceedings *brought under* this

24  [Chapter 2.]"  9 U.S.C. § 208 (emphasis added).  Proceedings "brought under" Chapter 2 are limited

25  to actions to compel arbitration and to confirm an arbitral award.[3]  There is no action or proceeding

26

27     [3]  Because the United States has a federal system, Congress created a removal action in Chapter 2,
28  Section 205.  *See* Convention, Article XI (requiring a "federal or non-unitary State" to discharge its
Convention obligations to the same extent as "Contracting States which are not federal States").

RESPS.' MOT. TO DISMISS     CASE NO. 4:21-MC-80181

that can be "brought" under Chapter 2 to enforce an arbitral summons on a third-party; Chapter 2 does not address discovery at all.  Nor does Jones Day identify any "action or proceeding falling under the Convention" (and thus Chapter 2) to which Chapter 1, Section 7 could "apply."  And there is none.  Instead, Jones Day wants the residual clause to be read to create a new action or proceeding not otherwise contained in the Convention (or Chapter 2).  Jones Day's argument cannot be supported by the plain text of the statute or the purpose of Chapter 2.  As the House Judiciary Committee explained when recommending its enactment, Section 2 would be a "new chapter under title 9 of the United States Code (the Federal Arbitration Act) dealing *exclusively* with the recognition and enforcement of awards pursuant to the provisions of the convention."  H.R. Rep. No. 91-1181 at 1 (1970) (emphasis added).

*Second*, if Congress wanted to provide a basis for federal jurisdiction, it would do so clearly not elliptically.  It did draft Chapter 2 to confer subject-matter jurisdiction, even though courts had long held that the FAA "does not of itself confer independent federal jurisdiction" over actions or proceedings under Chapter 1.  *Mengel Co. v. Nashville Paper Prod. & Specialty Workers Union, No. 513*, 221 F.2d 644, 648 (6th Cir. 1955); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 420 (1967) (Black, J., dissenting) (observing that the FAA does not "provide an independent federal-question basis for jurisdiction in federal courts apart from diversity jurisdiction").  Thus, when it passed the FAA in 1925, Congress effectively limited the assistance of federal courts to disputes over arbitral summonses where there is diversity jurisdiction.  When Congress was called upon to implement the Convention, it found it "preferable to enact a new chapter dealing exclusively with the recognition and enforcement of awards falling under the Convention" because "[t]his approach would *leave unchanged the largely settled interpretation of the Federal Arbitration Act*."  H.R. Rep. No. 91-1181 at 3 (1970).  The settled interpretation is that federal courts do not have federal-question jurisdiction over Chapter 1 petitions.  Congress did not intend Chapter 2 to change that.

Notwithstanding the text and the history, Jones Day argues to the contrary—that Congress dramatically expanded the scope of federal jurisdiction for such discovery disputes under Chapter 2, and that it did so silently in response to a treaty that says nothing about discovery rights.  That

argument would entail "a potentially drastic change in the scope of federal court activity" over arbitration matters. *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F. Supp. 957, 961 (S.D.N.Y. 1988) (Leval, J.). If Congress had intended Chapter 2, Section 203 to confer jurisdiction on federal courts over actions and proceedings under Chapter 1, it could have done so easily: Section 203 could provide that "the district courts of the United States shall have original jurisdiction over an action or proceeding falling under the Convention <u>or under Chapter 1</u>." But that is not how Congress drafted it.

   *Third*, the residual clause has a history and straightforward application that Jones Day ignores. When Congress enacted Chapter 2, the FAA had been in effect for 45 years. There were already well-established, familiar procedures for compelling arbitration and enforcing arbitral awards in federal courts. For example, Chapter 1, Section 4 contains a lengthy, 387-word description of the procedure for seeking an order to compel arbitration, including the manner of notifying an opposing party, effecting service, and adjudicating disputed issues of fact. *See* 9 U.S.C. § 4. Thus, when Congress implemented the Convention in 1970 by enacting Chapter 2, it simply provided that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for[.]" 9 U.S.C. § 206. The residual clause then makes the procedures set forth in Chapter 1, Section 4 applicable to an action or proceeding under Chapter 2, Section 206 to compel arbitration. The same is true of actions or proceedings to confirm an arbitral award. Chapter 2, Section 207 provides without elaboration that "any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." Chapter 1, Section 9 provides the detailed procedure that applies to an action or proceeding for confirmation. *Compare* 9 U.S.C. § 207 *with* 9 U.S.C. § 4.[4] Rather than drafting new procedures for the enforcement and recognition proceedings, Congress simply referred back to the existing law in Chapter 1 of the FAA and its "settled interpretation." H.R. Rep. No. 91-1181 at 3 (1970).

---

[4] The residual clause also provides that Chapter 1 shall apply to actions or proceedings under Chapter 2 only "to the extent that chapter is not in conflict with this chapter or the Convention[.]" 9 U.S.C. § 208. For example, Section 9 requires a petition to confirm an arbitral award be filed within one year, whereas Section 207 gives parties three years to seek confirmation.

*Fourth*, Jones Day's argument would create a striking imbalance in access to federal courts for arbitral discovery disputes:  Non-diverse parties from the United States would be denied access to the federal courts of the United States, while foreign parties could readily apply under Section 203.  "It would be surprising if Congress had intended so drastic a change of federal jurisdiction," particularly through a residual clause that does not itself create jurisdiction or address third-party discovery.  *Drexel*, 696 F. Supp. at 961.  Congress did not intend such a drastic change.

But Jones Day's argument would reach even further in opening the doors of federal courts. Jones Day argues that a petition under Section 7 is within the Court's jurisdiction because the underlying arbitration is international and falls under the Convention.  But many arbitrations arise out of agreements that fall under the Convention, including those not seated in the United States.  Thus, if Jones Day were correct, Congress would have opened the courts of the United States (and their powers of compulsion and "punishment" over witnesses within their districts, *see* 9 U.S.C. § 7) to foreign parties arbitrating foreign disputes in foreign countries, all while denying the same access to many parties in the United States.

*Fifth*, Jones Day misstates the relationship between Chapter 1 and Chapter 2 of the FAA. Jones Day suggests that the residual clause "incorporates" the provisions of Chapter 1 so as to make them applicable to international arbitrations.  But Congress did not need the residual clause to make Chapter 1 applicable to international arbitrations seated in the United States.  An international arbitration as contemplated by the Convention will arise out of "commerce . . . with foreign nations," *see* 9 U.S.C. §§ 1, 2, and will already be subject to the FAA if it is seated in the United States.  When Congress enacted the FAA in 1925, it had already decided how it wanted to apply Section 7 of the FAA to international arbitrations seated in the United States.  Nothing in the Convention or the residual clause suggests that Congress wanted to change that balance.

*Finally*, Jones Day suggests that the Court can compel Respondents to attend the hearing under Section 206.  *See* Mot. 8 n.4.  Section 206 provides:  "A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for[.]"  9 U.S.C. § 208.  Jones Day argues that enforcing a summons under Section 7 is "necessary and appropriate to ensure that the arbitration is held 'in accordance' with the Arbitration

Agreement." Mot. 8 n.4.  Not so.  Section 206 authorizes a court to compel the parties to perform their arbitration agreement (i.e., directing that the "arbitration be held in accordance with the agreement" at the "place therein provided for").  The title of Section 206 explains that it provides the right to "[o]rder to compel arbitration."  Jones Day is not seeking to compel Respondents to perform any agreement to arbitrate; they are not parties to the ████████████████ , and nothing in FAA or the Convention requires third parties to perform in accordance with the terms of ████████████████ .

### 3.    Jones Day's Position Finds No Support in Federal Case Law

Jones Day cites two cases to suggest that Section 203 confers subject-matter jurisdiction over this Petition.  Neither is compelling.

In *Matter of Arb. between Tang Energy Grp., LTD v. Catic U.S.A.*, 2015 WL 4692459 (N.D. Cal. Aug. 6, 2015), the recipient of an arbitral summons petitioned the Northern District of California to quash the summons, which called for him to appear in at an arbitral hearing in Dallas, Texas.  The court noted that "[the petitioner] asserts that the court has subject-matter jurisdiction over this matter because the underlying arbitration 'falls under' the New York Convention."  *Id.* at *2 n.2.  The court did not consider that assertion or otherwise analyze the argument.  Instead, the court dismissed the petition because, *inter alia*, it had been filed in the wrong court:  The "plain language" of the FAA required the petitioner to file in Texas, where the arbitration was seated.  *Id.* at *2.  This Court should also dismiss the Petition for the same reason, since the underlying arbitration is seated in Washington, D.C.  *See* Part II *infra*.

In *Stemcor USA Inc. v. CIA Siderurgica do Para Cosipar*, 927 F.3d 906 (5th Cir. 2019), the Fifth Circuit considered a petition by a South Korean company "seeking an order compelling arbitration and an attachment of [certain assets] on board a ship then-anchored in New Orleans" that belong to the respondent.  *Id.* at 908.  The Fifth Circuit concluded that it had subject-matter jurisdiction under Chapter 2, Section 203 of the FAA both to compel arbitration under Section 206 and "to issue provisional remedies in aid of arbitration."  *Id.* at 910.  In so doing, the Fifth Circuit suggested a novel and broader view of jurisdiction under Chapter 2, Section 203—notably, however, in far different circumstances that involved only parties to the arbitration agreement and

RESPS.' MOT. TO DISMISS                                                                                      CASE NO. 4:21-MC-80181

not third-party witnesses.  The court opined that courts have subject-matter jurisdiction under that provision where "the action or proceeding relates to a covered arbitration agreement or award" that falls under the Convention.  *Id.* at 909 (internal quotation marks omitted).

The Ninth Circuit has not adopted the Fifth Circuit's expansive language in *Stemcor*.  And even the Fifth Circuit did not apply Section 203 as broadly as Jones Day urges here—i.e., to compel the conduct of *third parties* who did not sign the underlying arbitration agreement.  The Fifth Circuit held that *one arbitrating party* may attach *the other arbitrating party's* assets pending the outcome of the arbitration.  In that case, both parties had signed the arbitration agreement and the federal court was, in effect, ordering them to perform under that agreement.  The Fifth Circuit was not exercising federal court jurisdiction to compel a third party to take any action.  Applying Section 203 to exercise power over third parties would mark a sea change in federal arbitration law.

Even in the context of applying Chapter 2 to the arbitrating parties, the Fifth Circuit's reasoning misreads the relevant text and conflicts with Ninth Circuit jurisprudence.  The Fifth Circuit's analysis is an atextual reading that improperly conflates two provisions of Chapter 2— Sections 203 and 205.  Section 203 confers jurisdiction over "actions or proceedings falling under the Convention."  Section 203 does not confer jurisdiction over any action or proceeding that "relates to" an international arbitration.  The "relates to" language that the Fifth Circuit imported into Section 203 comes from the removal provisions in Section 205.  The Ninth Circuit appropriately does not conflate these two Sections.  It treats Sections 203 and 205 "independently," which forecloses the Fifth Circuit's reasoning.  *See, e.g.*, *Cerner Middle E. Ltd. v. Belbadi Enterprises LLC*, 939 F.3d 1009, 1015 n.5 (9th Cir. 2019).  Consistent with the goals of the Convention, *see Scherk*, 417 U.S. at 517, Section 205 ensures the enforceability of arbitration agreements by preventing parties to those agreements from relitigating the merits of a dispute in state court.  Section 205 does not give federal courts subject-matter jurisdiction over third parties (like Respondents here) who did not sign any arbitration agreement with the petitioner.

## II.      THE NORTHERN DISTRICT OF CALIFORNIA IS AN IMPROPER VENUE.

Regardless of Jones Day's jurisdictional arguments, the Court must also dismiss the Petition for an additional reason:  as applied here, Chapter 1, Section 7 and Chapter 2, Section 204 both

12

would require that any petition to compel compliance with an arbitral summons be filed in the United States District Court for the District of Columbia.  The Northern District of California is an improper venue.  When a plaintiff files an action in the wrong venue, courts "*shall* dismiss, or if it be in the interest of justice, transfer such case" to the proper venue.  28 U.S.C. § 1406(a) (emphasis added).

**A.      Chapter 1, Section 7 Mandates Venue in the District of Columbia.**

"Venue in federal court is governed by statute."  *TeleSign Corp. v. Twilio, Inc.*, 2015 WL 12765482, at \*2 (C.D. Cal. Oct. 16, 2015).  When a statute contains a specific venue provision, it defines the "mandatory and exclusive" forum where venue is proper.  *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 152 (1976); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 n.2 (2013) (holding that the general venue statute, 28 U.S.C. § 1391, does not apply when another statute contains a specific venue provision.).

"Congress generally uses the expression, where suit 'may be brought,' to indicate the federal districts in which venue is proper."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1555 (2017); *see also, e.g.*, *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 225 (1957) (designation of districts in which suit "may be brought" under 28 U.S.C. § 1400 provides the "exclusive provision controlling venue in patent infringement proceedings"); *Johnson v. Payless Drug Stores Nw., Inc.*, 950 F.2d 586, 587 (9th Cir. 1991) (same for Title VII claims under 28 U.S.C. § 2000e-5(f)(3)).

Chapter 1, Section 7 contains a special venue provision:

> [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition *the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel* the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added).

"[T]he plain meaning of 9 U.S.C. § 7 requires that a motion to compel must be filed in the district in which the arbitrators are sitting."  *Managed Care Advisory Grp. v. CIGNA Healthcare*, 939 F.3d 1145, 1158 (11th Cir. 2019) (per curiam).

In the context of arbitration, the "seat" has a particular meaning.  It is the juridical home of the arbitration, which the parties choose in advance in the arbitration agreement.  *See* Born, *Int'l Commercial Arbitration* (3d Ed.) at 1662–63 (distinguishing the "seat," which is the fixed "juridical home or legal domicile of the arbitration," from the venue of a hearing, which may be "conducted outside the designated place" of the seat).  Federal courts have interpreted the phrase "are sitting" in Section 7 to refer to the juridical seat of the arbitration, and not to the venue for a hearing.  For example, the Northern District of Georgia was asked to enforce a summons for non-party testimony at a hearing in Georgia, pursuant to an arbitration governed by the FAA and seated in New York. *See Rembrandt Vision Techs, L.P. v. Bausch & Lomb, Inc.*, 2011 WL 13319343 (N.D. Ga. Oct. 7, 2011).  The summons directed a witness to appear at a hearing in Georgia, but the court dismissed the petition because "the arbitrators in this case are sitting in New York and not the Northern District of Georgia[.]"  The court reasoned:

> [T]he structure of the [FAA] indicates that there is but one place where the arbitrators, or a majority of them, are sitting. Omitted from the statutory text is any indication that "the *district* in which such arbitrators, or a majority of them, *are* sitting" is a flexible term meaning wherever the arbitrators or a majority of them happen to be at the time of a hearing. In order to convey the meaning that the district could be multiple districts where the arbitrators choose to have a particular hearing at the time, would require additional words that are not present in the statute.

*Id.*  The court drew support from a Second Circuit case, *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 95 (2d Cir. 2006), which concluded that "the arbitrators were sitting in the Southern District of New York, so FAA Section 7 required that any enforcement action be brought there." *See also Amgen Inc. v. Kidney Ctr. of Delaware County, Ltd.*, 1994 WL 594372, at *1–2 (E.D. Pa. Oct. 20, 1994) (dismissing petition to compel because "the arbitrator in the underlying arbitration is sitting in Chicago" and "it was incumbent upon Amgen, pursuant to the plain language of Section 7 of the Federal Arbitration Act, to bring its petition to compel compliance in [Illinois]," not in Pennsylvania.).[5]

---

[5] Courts routinely hear petitions to compel only when the arbitration is seated within their district. *See, e.g.*, *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 705 (9th Cir. 2017) (where arbitral

**B.      Chapter 2, Section 204 Mandates Venue in the District of Columbia.**

Jones Day relies on Chapter 2, Section 203 for subject-matter jurisdiction.  If Jones Day

were correct about that argument (it is not), then the Petition still must be dismissed because this

district is not the proper venue.  Chapter 2, Section 204 contains a special venue provision:

> An action or proceeding over which the district courts have
> jurisdiction pursuant to section 203 of this title *may be brought*
> [A] in any such court in which save for the arbitration
> agreement an action or proceeding with respect to the
> controversy between the parties could be brought, or [B] in such
> court for the district and division which embraces the place
> designated in the agreement as the place of arbitration if such
> place is within the United States.

9 U.S.C. § 204 (emphasis added).  The Northern District of California satisfies neither requirement.

*First*, the Northern District of California is not a court "in which save for the arbitration

agreement an action or proceeding with respect to the controversy between the parties could be

brought."  9 U.S.C. § 204.  The Supreme Court has explained that the "save for" jurisdiction under

the FAA requires a court to look to "look through" the petition to the "underlying dispute" between

the parties.  *Vaden v. Discover Bank*, 556 U.S. 49, 62–63, (2009).  In this case, that means the

dispute between Jones Day and ███████████████████████████████████

███.  The Court does not have federal question jurisdiction over that contractual dispute,

██████████████████.  Nor would the Court have diversity jurisdiction over a dispute

between Jones Day, which has partners in ██████████████████████

██████████████  "The statutory requirement of complete diversity [is] not

satisfied" where there are "aliens[] on opposite sides of the litigation."  *Saadeh v. Farouki*, 107 F.3d

52, 56 (D.C. Cir. 1997); *accord Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020).

---

summons was returnable in Miami and arbitration was seated in Arizona, petitioner filed for
enforcement in the District of Arizona); *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 95
(2d Cir.2006) ("the arbitrators were sitting in the Southern District of New York, so FAA Section 7
required that any enforcement action be brought there"); *Alliance Healthcare Servs., Inc. v.
Argonaut Private Equity, LLC*, 804 F. Supp. 2d 808, 811–12 (N.D. Ill. 2011) ("Because the
arbitration proceeding is being conducted in Chicago, only a court in this district may enforce a
subpoena issued by the arbitrators.")

*Second*, the Northern District of California is not the district "which embraces the place designated in the agreement as the place of arbitration[.]"  9 U.S.C. § 204.  The arbitration agreement designates ██████████████████████████████████ ████████████████████████  That city is Washington, D.C., where Jones Day filed its arbitration.

Thus, as applied here, the only proper venue to file a petition invoking the jurisdiction conferred by Chapter 2, Section 203 is the United States District Court for the District of Columbia. The Northern District of California is an improper venue.

<p style="text-align:center">*       *       *</p>

Jones Day will inevitably complain that these interlocking jurisdiction and venue provisions create an unconscionable Catch-22 that would leave it without any discovery rights at all.  But that is not true:  The FAA provides limited discovery rights, which are enforceable when three conditions obtain: (i) the petitioner files in the federal district court for the district that contains the seat of the arbitration; (ii) that court has subject-matter jurisdiction independent of the FAA (e.g., where the parties are diverse); and (iii) that court has personal jurisdiction over the witness.  Jones Day dictated each of those three conditions by selecting the FAA as the governing law and designating Washington, D.C. as the seat of the arbitration.

## III.     THE SUMMONSES ARE UNENFORCEABLE UNDER THE FAA.

The Court should dismiss the Petition for the reasons set forth in Parts I and II.  If, however, the Court were to accept jurisdiction over the Petition and find that venue is proper, the Court should dismiss the Petition for failure to state a claim under Rule 12(b)(6).  Dismissal is proper under Rule 12(b)(6) where, as here, a complaint lacks a cognizable legal theory.  *See Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *Neitzke v. Williams*, 490 US. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").  The underlying arbitration and the summonses are governed by the Federal Arbitration Act.  Under the FAA, an arbitrator may only summon witnesses in the federal court where the arbitration is seated—here, in the District of Columbia.  The FAA does not give Jones Day any cognizable claim to enforce in this jurisdiction.  Additionally, the summons

addressed to Orrick is defective in any court because it seeks relief unavailable under the FAA, in that it purports to compel the compliance of a non-witness entity, rather than a natural person.

A.    **The FAA Does Not Permit an Arbitrator to Summon Witnesses Outside the District that Contains the Seat of the Arbitration.**

Seeking an end-run around the FAA's venue provision, Jones Day asked the Arbitrator to travel and summon Respondents to a hearing in California.  But the FAA grants arbitrators only narrow power over third parties, and that power does not extend to summoning witnesses to preliminary hearings outside the juridical seat of the arbitration.

As discussed above (*see* Part II.A *supra*), courts consistently hold that an arbitrating party can only seek enforcement of an arbitral summons in the district at the seat of the arbitration.  Congress authorized only those courts to aid arbitrating parties in compelling third parties to appear.  A federal district court may only compel the attendance of a witness if (a) the court has personal jurisdiction over him and (b) the witness either resides within 100 miles or within the state in which the hearing will be held.  *See* Fed. R. Civ. P. 45(c)(1).  As applied here, even if there were federal subject-matter jurisdiction, Jones Day could only seek enforcement in the United States District Court for the District of Columbia.  It would make no sense for the FAA to authorize an arbitrator to summon witnesses to appear in California, when the only court with enforcement authority could never compel those witnesses to appear.  Any contrary conclusion would frustrate the geographic limitations on third-party discovery that Congress imposed in Section 7.

Congress surely did not intend to permit private parties to hire a private arbitrator and travel around the country to compel the testimony of third parties through the power of federal courts.  "Non-parties, by definition, have not agreed to abide by the arbitrator's decisions.  Thus, even though the FAA represents a congressional policy in favor of arbitration . . . the most appropriate interpretation of §7 is a narrow one."  *McTammany v. Foundation Capital Partners L.P.*, 2015 WL 12781404, *2 (C.D. Cal. May 1, 2015).

There is nothing unexpected or unfair about that result.  Jones Day chose to arbitrate in D.C., not California.  It could have chosen to arbitrate in California, where Respondents would have been subject to an arbitral summons and the personal jurisdiction of the Northern District.  "Having

made one choice for their own convenience, the parties should not be permitted to stretch the law beyond the text of Section 7[.]"  *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 96 (2d Cir. 2006); *see also Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406 (3d Cir. 2004) (Alito, J.) ("An arbitrator's authority over parties that are not contractually bound by the arbitration agreement is strictly limited to that granted by the [FAA].").

### B.    The FAA Does Not Permit the Compulsion of Entity Testimony.

Section 7 authorizes an arbitrator to summon "any person to attend before them or any of them as a witness" and, "in a proper case," command that witness "to bring with him" certain documentary materials.  9 U.S.C. § 7.  Entities, including corporations and partnerships, are not witnesses who can appear to provide testimony in trials; only natural persons can give testimony. That is why a party in civil litigation must invoke Rule 30(b)(6) to secure the deposition attendance and testimony of a "public or private corporation, a partnership, an association . . . or other entity." There is no comparable provision in the FAA, nor does Section 7 permit pre-hearing discovery; it is purely a method for securing witness trial testimony at an evidentiary hearing.  The FAA does not authorize a summons requiring testimony from an entity.

In *Progenics Pharm., Inc. v. IMS Consulting Group*, Case No. 14-mc-245 (S.D.N.Y. Aug. 13, 2014), the court considered "whether, by analogy to Rule 30(b)(6), [a third-party corporate entity] can be compelled to educate an employee in New York about a Japanese [project] for the purpose of testifying before the arbitrators."[6]  The court easily answered "no," holding that there was no "dispute that it would be unprecedented to order a non-party to comply with an arbitration subpoena by designating a representative . . . in the same manner as 30(b)(6) deponent" and that the court had "no legal basis to do so here."  *Id.*  For the same reason, the summons directed at Orrick cannot compel the law firm to appear and give testimony before the Arbitrator.

### C.    The JAMS Rules Cannot Authorize Third-Party Discovery Outside the FAA.

Jones Day suggests that "the JAMS Rules . . . empower the Arbitrator to order Respondents to appear before him in California and bring documents with them" because JAMS Rule 19(c)

---

[6]  *IMS Consulting*, Tr. of Aug 13, 2014, *available at* https://www.courtlistener.com/recap /gov.uscourts.nysd.430688/gov.uscourts.nysd.430688.16.0.pdf

permits an arbitrator to "conduct the Hearing at any location." Mot. at 10. That argument fails for several reasons.

*First*, Jones Day's arbitration agreement provides that the FAA "govern[s] the proceedings." The JAMS Rules just provide a procedural framework for the conduct of the arbitration. They do not modify the powers granted to the arbitrator. As one of Jones Day's cited authorities explains, "'[t]he subpoena powers of an arbitrator are limited to those created by the express provisions of the [Federal Arbitration Act].'" *Matter of Arb. between Tang Energy Grp., LTD v. Catic U.S.A.*, 2015 WL 4692459, at *1 (N.D. Cal. Aug. 6, 2015) (quoting *COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 275 (4th Cir. 1999)); *see also Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008) (noting that AAA Rules cannot expand arbitrator's powers over non-parties, which derive only from Section 7 of the FAA).

*Second*, by the parties' agreement, the JAMS Rules cannot modify the parties' choice of the FAA: "To the extent that any provision of such Rules is, or could be construed to be, inconsistent *in any way* with the terms of this Agreement, the terms of this Agreement shall apply." ECF No. 2-7, Ex. A, Annex D ¶ 1 (emphasis added).

*Third*, Jones Day misapprehends the text of the JAMS Rules, which provide that the subpoena "shall be issued in accordance with *the* applicable law." ECF No. 2-7, Ex. B, Rule 21. "The" applicable law is the law that governs the arbitration—i.e., the law from which the arbitrator draws his powers. The notion that the arbitrating parties could compel third parties to appear and provide discovery under the procedural rules of an arbitral institution in a manner more expansive than the FAA otherwise permits "borders on frivolous." *Kenney, Becker LLP v. Kenney*, 2008 WL 681452, at *3 n.2 (S.D.N.Y. Mar. 6, 2008), *adhered to on denial of reconsideration*, 2008 WL 1848544 (S.D.N.Y. Apr. 22, 2008).

## IV.   ANY DISPUTE ABOUT THE DOCUMENTS DEMANDED BY THE SUMMONSES IS NOT RIPE FOR ADJUDICATION AND SHOULD BE DEFERRED.

For the reasons above, the summonses do not validly compel any response from Respondents, and the Petition does not compel any relief from the Court.

1  Accordingly, Respondents have not engaged in a detailed brief of all of the defenses they

2  would have to the production of the documents or testimony, including attorney-client and work-

3  product protections, restrictions provided by U.S. and foreign law and/or the rules or rulings of

4  other foreign tribunals, and whether all of the documents sought would meet the standard of

5  "material as evidence" in the pending arbitration.  With respect to those merits-based defenses, "it is

6  the role of the arbitrator first to rule on objections to the subpoena that he issued." *Int'l Longshore*

7  *and Warehouse Union v. Pacific Marine Ass'n*, 2011 WL 6141055 (N.D. Cal. 2011).

8  Respondents respectfully urge the Court to defer plenary litigation of these issues until the

9  Court has resolved (i) whether it should entertain this proceeding and (ii) whether the summonses

10  properly compel Respondents to appear before the Arbitrator; and until (iii) the Arbitrator has had

11  an opportunity to address the merits-based defenses to any validly issued summons.

12  ## CONCLUSION

13  For these reasons, Respondents respectfully request the Court dismiss the Petition either for

14  lack of subject-matter jurisdiction, because the Northern District of California is an improper venue,

15  or because the Petition fails to state a valid claim for relief.

16

17  Dated:  August 13, 2021                         Respectfully submitted,

18                                                  */s/ Nathan C. Dullum*

19                                                  L. Christopher Vejnoska (Cal. Bar No. 96082)
                                                    Karen G. Johnson-McKewan (Cal. Bar No. 121570)
20                                                  Nathan C. Dullum (Cal. Bar No. 222267)
21                                                  **ORRICK, HERRINGTON & SUTCLIFFE LLP**

22                                                  *Attorneys for Respondents Orrick, Herrington &*
                                                    *Sutcliffe LLP, Michael Torpey, and Mitchell Zuklie*

23

24

25

26

27

28

RESPS.' MOT. TO DISMISS                                              CASE NO. 4:21-MC-80181