1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONES DAY,

          Petitioner,

    v.

ORRICK, HERRINGTON & SUTCLIFFE
LLP, et al.,

          Respondents.

Case No. 21-mc-80181-JST

**ORDER DENYING MOTION AND
PETITION TO COMPEL
COMPLIANCE WITH ARBITRATION
SUMMONSES**

Re: ECF Nos. 1, 3, 30

      At issue in this case are third-party summonses issued to Respondents Orrick Herrington &
Sutcliffe, LLP; Michael Torpey; and Mitchell Zuklie in an international arbitration in which
Petitioner Jones Day is a party.  Jones Day has filed both a petition to compel compliance with
arbitration summonses, ECF No. 1, and a motion to compel compliance with arbitration
summonses, ECF No. 3.  Respondents oppose the motion to compel, ECF No. 32, and have also
filed a motion to dismiss the petition, ECF No. 30.

      Jones Day asserts that the motion to dismiss is improper under "the uniform and consistent
practice of courts in this district in ruling on motions to compel in miscellaneous cases without
entertaining motions under Rule 12."  ECF No. 36 at 8 n.1.  But Jones Day in this case chose to
file not only a motion to compel, but also a petition to compel compliance with arbitration
summonses.  It cites no authority that a motion to dismiss cannot be filed in response to such a
petition.  In addition, Respondents' one-page opposition to the motion to compel incorporates the
motion to dismiss by reference, and Jones Day's reply in support of the motion to compel
responded to those arguments.  The Court therefore considers the arguments raised in the motion
to dismiss and, pursuant to Jones Day's request, "treat[s] [Jones Day's] reply brief as [its]
opposition to the motion to dismiss."  *Id.*  Accordingly, the Court denies Jones Day's request to

strike Respondents' reply brief to the motion to dismiss.  ECF No. 46.

For the reasons discussed below, the Court concludes that it lacks the authority to compel compliance with the arbitration summonses.[1]  Jones Day seeks enforcement of the summonses under 9 U.S.C. § 7, which provides that arbitrators may issue summonses and that:

> if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition *the United States district court for the district in which such arbitrators, or a majority of them, are sitting* may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added).  The arbitrator issued summonses to Respondents for a hearing to be held in San Jose, California, which is within this district.  However, it is undisputed that Washington, D.C., is the seat of the underlying arbitration.  This Court is therefore not "the United States district court for the district in which [the arbitrator is] sitting."  *Id.*

Jones Day argues that the arbitrator is "sitting" in this district for purposes of having the hearing at which Respondents were summoned to appear.  It finds support in *Washington National Insurance Company v. OBEX Group LLC*, where the district court noted that "the summonses ordered respondents to appear at a hearing in New York City.  Thus, the arbitrators are sitting in the Southern District of New York, and the Court has the authority under Section 7 to enforce the summonses."  No. 18 CV 9693 (VB), 2019 WL 266681, at *5 (S.D.N.Y. Jan. 18, 2019), *aff'd*, 958 F.3d 126 (2d Cir. 2020).  The court reached this conclusion despite the fact that the arbitration panel had also "summoned a nonparty to appear for a hearing in Philadelphia, and a district court in the Eastern District of Pennsylvania issued an order . . . enforcing that summons."[2]  *Id.*  However, as the Second Circuit noted when affirming the district court, "[t]he arbitration

---

[1] The parties dispute whether Chapter 2 of the Federal Arbitration Act confers jurisdiction on this Court.  Because the Court concludes that it lacks authority to grant Jones Day's requested relief in any event, it does not decide that question.

[2] The order from the Eastern District of Pennsylvania was two pages long and contains no description of the court's basis for granting the petition, let alone any discussion of where the arbitrator was sitting.  *Bankers Conseco Life Ins. Co. v. Egan-Jones Ratings Co.*, No. 2:18-MC-00166-JS, ECF No. 7 (E.D. Pa. Oct. 1, 2018).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    agreement here stipulated that any arbitration would take place in New York, New York," the

2    same location in which the defendants were ordered to appear – a fact that distinguishes that case

3    from this one.  *Wash. Nat'l Ins. Co.*, 958 F.3d at 139.

4         The Second Circuit's opinion did imply that arbitrators might sit in different districts at

5    different times.  *Id.* at 140 ("Whether the arbitrators were sitting in the Eastern District of

6    Pennsylvania at another time or in connection with a separate summons is not relevant to our

7    inquiry.").  But the question before the court was whether a district court has authority to enforce a

8    summons issued for a hearing to be held in the same location as the designated place of arbitration.

9    The court did not decide whether a different court – the Eastern District of Pennsylvania – had

10   authority to enforce a different summons issued as part of the same arbitration.

11        On the question of whether an arbitrator can "sit" in more than one location for purposes of

12   9 U.S.C. § 7, the Court finds the following analysis persuasive:

13            [T]he structure of the statute indicates that there is but one place
             where the arbitrators, or a majority of them, are sitting.  Omitted from
14           the statutory text is any indication that "the district in which such
             arbitrators, or a majority of them, are sitting" is a flexible term
15           meaning wherever the arbitrators or a majority of them happen to be
             at the time of a hearing.  In order to convey the meaning that the
16           district could be multiple districts where the arbitrators choose to have
             a particular hearing at the time, would require additional words that
17           are not present in the statute.

18   *Rembrandt Vision Techs., L.P. v. Bausch & Lomb, Inc.*, No. 1:11-CV-2829-JEC, 2011 WL

19   13319343, at *3 (N.D. Ga. Oct. 7, 2011) (emphasis omitted), *report and recommendation adopted*,

20   2011 WL 13319422 (N.D. Ga. Oct. 28, 2011); *but see Wash. Nat'l Ins. Co.*, 2019 WL 266681, at

21   *5 ("Nothing in Section 7 requires an arbitration panel to sit in only one location.").  Jones Day

22   has no meaningful response to Respondents' argument that the ability of an arbitrator to conduct

23   hearings in other locations does not mean that the arbitration changes seats.  According to the

24   Restatement, for example, "[t]he seat is the legal or juridical home of the arbitration, but not

25   necessarily the place where the arbitration hearings take place."  Restatement (Third) U.S. Law of

26   Int'l Comm. Arb. § 1.3 cmt. a (Am. L. Inst. 2019); *see also id.* Reporters' Notes to cmt. a ("The

27   seat is not necessarily the location at which any arbitral hearings are held.  Although the two often

28   are the same, they need not be: the parties or arbitrators can agree to hold the hearings at a location

1    other than the seat.").

2         Courts have held that motions to enforce summonses must be brought in the district court

3    covering the location in which the arbitrators are sitting and not, if the two locations are different,

4    in the district court covering the location to which the parties were summoned.  For example, one

5    court explained that, where an arbitration proceeding was being conducted in Chicago, "only a

6    court in [the Northern District of Illinois] may enforce a subpoena issued by the arbitrators" under

7    9 U.S.C. § 7.  *All. Healthcare Servs., Inc. v. Argonaut Priv. Equity, LLC*, 804 F. Supp. 2d 808,

8    811-12 (N.D. Ill. 2011).  This was true even where the subpoenas "call[ed] for production of

9    documents and attendance at a hearing in San Francisco."  *Id.* at 811.  As another court explained:

10   "The plain language of 9 U.S.C. § 7 requires that a person who wants a subpoena issued by

11   arbitrators to be enforced do so by filing a petition [in] the district court in which the arbitrators

12   are sitting.  Numerous courts have recognized this requirement."  *Matter of Arb. between Tang*

13   *Energy Grp., Ltd. v. Catic U.S.A.*, No. 3:15-mc-80209-LB, 2015 WL 4692459, at *2 (N.D. Cal.

14   Aug. 6, 2015).  Jones Day argues that this line of cases is no longer good law because Rule 45 of

15   the Federal Rules of Civil Procedure, which governs service under 9 U.S.C. § 7, was amended in

16   2013 to allow nationwide service of subpoenas.  *See* 9 U.S.C. § 7 ("Said summons . . . shall be

17   served in the same manner as subpoenas to appear and testify before the court"); Fed. R. Civ. P.

18   45(b) (governing service of subpoenas).  But Jones Day does not explain how changing where a

19   subpoena can be served affects where an arbitrator is "sitting" for purposes of enforcing

20   compliance under 9 U.S.C. § 7.  To the contrary, post-2013, the Eleventh Circuit drew a

21   distinction between the location in which arbitrators sit and that in which compliance with a

22   summons might be required.  It "conclude[d] that the plain meaning of 9 U.S.C. § 7 requires that a

23   motion to compel must be filed in the district in which the arbitrators are sitting" and not, as

24   specified in Rule 45, "the district where compliance is required."  *Managed Care Advisory Grp.,*

25   *LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1158 (11th Cir. 2019) (per curiam).

26        *Seaton Insurance Company v. Cavell USA*, No. 3:07-cv-356 (AHN), 2007 WL 9657277

27   (D. Conn. Mar. 21, 2007), on which Jones Day seeks to rely, is distinguishable.  In that case, the

28   arbitration agreement "designated New York, New York as the site of arbitration," but the parties

to the arbitration agreement agreed to have the arbitration hearing in Hartford, Connecticut, to which the defendants were summoned. *Id.* at *2. The court observed that "the defendants have not identified nor can the court find any statute or rule that prevents the parties to an arbitration agreement from mutually agreeing to move the arbitration to a location other than the one designated in an arbitration agreement." *Id.* Here, by contrast, there is no evidence that Jones Day's opposing party in the underlying arbitration has agreed to move the arbitration to this district from Washington, D.C. In addition, the merits hearing for the underlying arbitration remains scheduled in Washington, D.C., ECF No. 3-2 at 60, whereas the order in *Seaton* implies that the single "arbitration proceeding" occurred in Connecticut, 2007 WL 9657277, at *2; *see also id.* at n.7 ("The court also questions how the defendants, who are not parties to the arbitration or to the agreement to arbitrate, have standing to challenge the parties' and the arbitration panel's decision to hold *the* arbitration hearing in Connecticut." (emphasis added)). The Court does not find *Seaton* persuasive.

For the above reasons, the Court denies Jones Day's motion to compel compliance with arbitration summonses and also denies Jones Day's petition seeking the same relief. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: September 7, 2021



_____
JON S. TIGAR
United States District Judge